## GORNTO *v.* WILSON.

1. "Before heirs at law of a deceased intestate can recover land which had belonged to the estate of such intestate, they must allege and prove that there was no administration on the estate, or that the administrator, if there was one, assented to their bringing the suit." "The best method of proving that no administration was ever had upon a particular estate is to introduce the evidence of the ordinary, or of another who has

examined the records in the court of ordinary where letters of administration should have been granted, that no such letters are shown by those records."

2. An unascertained or disputed boundary line between coterminous proprietors may be established either by oral agreement, if the agreement be accompanied by actual possession to the agreed line or is otherwise duly executed; or by acquiescence for seven years by the acts or declarations of owners of adjoining land, as provided in the Civil Code (1910), § 3821. When a line has been located and established by seven years acquiescence, as required by the code, the line thus located and established is binding on the grantees of the coterminous proprietors.

APRIL 23, 1914.

Complaint for land. Before J. G. Cranford, judge pro hac vice. Lowndes superior court. June 14, 1913.

*E. K. Wilcox,* for plaintiff in error.

*Denmark & Griffin,* contra.

EVANS, P. J. Robert Wilson brought an action in ejectment in the common-law form against J. E. Gornto. The title relied on by the plaintiff was: a deed from W. L. Thomas to William Wilson, dated October 1, 1879; the death of William Wilson in 1896, leaving a widow and two children, i. e., plaintiff and his sister, Eugenia McAuley; the death of the widow in 1900, and a division of the estate of William Wilson between the plaintiff and his sister, in execution of which Eugenia McAuley, on November 15, 1904, conveyed to the plaintiff her half undivided interest in a described portion of the land. The plaintiff submitted evidence tending to show that these conveyances covered the land in dispute, and that he and his ancestor had held possession thereunder. A verdict was rendered for the plaintiff, which the court refused to set aside on motion for new trial.

1. Complaint is made that the court allowed a witness to testify that there was no administration on the estate of his father or that of his mother, without preliminary proof that he had personally examined the records of the court of ordinary. Under the decision in *Greenfield* v. *McIntyre,* 112 *Ga.* 691 (38 S. E. 44), "before heirs at law of a deceased intestate can recover land which had belonged to the estate of such intestate, they must allege and prove that there was no administration on the estate, or that the administrator, if there was one, assented to their bringing the suit." "The best method of proving that no administration was ever had upon a particular estate is to introduce the evidence of the ordinary,

or of another who has examined the records in the court of ordinary where letters of administration should have been granted, that no such letters are shown by those records." *Compton* v. *Fender,* 132 *Ga.* 483 (64 S. E. 475); *Dixon* v. *Patterson,* 135 *Ga.* 183 (69 S. E. 21). The plaintiff claimed a right to recover as an heir at law, and it was incumbent upon him, under the rule thus announced, to prove that there was no administration upon the estate of his ancestor, or that, if there was an administrator, he assented to the plaintiff bringing the suit. Before a witness, who was not the ordinary, could establish the absence of administration, it was necessary that it be shown that he gained his information from an examination of the records of the ordinary in the county where the administration should have been. Accordingly, it was error to admit this testimony.

2. The defendant claimed title through mesne conveyances from Nero Gregg. The evidence developed that the inclusion of the locus in quo within the muniments of title of the contending parties depended upon the location of the boundary line between the Nero Gregg land and the land embraced in the deed from Thomas to Wilson. In the deed from Thomas to Wilson the eastern call was for the western line of the Nero Gregg lot. The plaintiff offered evidence tending to show that at the time of the execution of this deed, and when his father went into possession of the land purchased from Thomas, there was a fence on the western line of Nero Gregg's lot, which was recognized by Gregg as the line between the two lots of land, and that his father's possession of the land purchased from Thomas extended to this boundary, and, as contended, for a period longer than seven years. The court charged: "If you find from the evidence that the line between these parties, or their predecessors in title, was at one time uncertain, and that the parties or their predecessors in title agreed upon a line, and that was acquiesced in for a period of seven years by them or their predecessors in title, that line would be binding upon all parties. The court charges you, however, that this rule will not apply unless at some time there was uncertainty about the land line." An unascertained or disputed boundary line between coterminous proprietors may be established either by oral agreement, if the agreement be accompanied by actual possession to the agreed line or is otherwise duly executed; or by acquiescence for

seven years by the acts or declarations of the owners of adjoining land, as provided in the Civil Code (1910), § 3821. When a line has been located and established by seven years acquiescence, as required by the code, the line thus located and established is binding on the grantees of the coterminous proprietors. *Osteen* v. *Wynn,* 131 *Ga.* 209 (62 S. E. 37, 127 Am. St. R. 212). The instruction complained of was not strictly accurate, in that it referred to an agreement between the parties, and the evidence fails to show a conventional line; but there was evidence of acquiescence, by the coterminous landowners, in a particular line for a period of more than seven years. This slight inaccuracy, however, would not be sufficient ground of itself to require the grant of a new trial. Other assignments of error are without merit. As the case must go back for a new trial because the court improperly allowed testimony necessary to establish an element of the plaintiff's cause, we forbear a discussion upon the merits.

*Judgment reversed. All the Justices concur, except Atkinson, J., absent.*