36970. TURNER *v.* McKEE.

DECIDED APRIL 9, 1958—REHEARING DENIED APRIL 23, 1958.

*J. Willard Register, Young & Hollis, Algie M. Moseley, Jr.,* for plaintiff in error.

*Foley, Chappell, Kelly & Champion, Forrest L. Champion,* contra.

CARLISLE, Judge. W. T. McKee sued Frank Turner for $1,367.84 damages for the unlawful cutting and carrying away of timber from a certain described tract of land in lot 227 of the 17th land district of Muscogee County, Georgia. Upon the trial of the case, the jury returned a verdict upon which judgment was entered for the plaintiff in the amount of $505.29, stumpage value. The defendant made a motion for a new trial on the general grounds which he amended by the addition of 8 special grounds. The trial court denied that motion and the exception here is to that judgment.

It appears from the evidence that the plaintiff owned all of the land in lot 254 which lies immediately to the west of lot 227 wherein the disputed tract lies. At the time of the suit the plaintiff had been the owner and in possession of that tract of land for more than 30 years. South of lot 227 lies land lot 226, and to the west thereof and south of lot 254 lies lot 255. Flowing from north to south through the northeast corner of lot 254 and the southwest corner of lot 227 and through the western one-third of lot 226 is a stream variously referred to in the record as Franklin Creek, Boyd Branch, Kendle Creek and Upatoi Creek. This stream crosses the boundary between lots 254 and 227 roughly midway between the northern and southern boundaries of these lots and flows southerly in an irregular course across the southwest corner of lot 227 and across the boundary between lots 227 and 226 some 600 odd feet east of the corner between

the four lots in question. The land in the southwest corner of lot 227 lying to the west of this stream and consisting of some 11 or 12 acres seems to have been conceded to be a part of the plaintiff's land.

Lying to the east of this stream and including all of the land in lots 227 and 226 east of the stream, with the possible exception of the tract in dispute to which further reference will shortly be made, are the lands forming a portion of what is known as the Samson Bickley estate. These lands are described as containing 300 acres, more or less, off the east side of lots Nos. 226 and 227, and as being bounded on the west "nearly all the way by Kendle Creek and at the north end of same by lands of . . . W. T. McKee." These lands were acquired by the defendant under a warranty deed dated July 7, 1954, made to him by Mrs. Myrtle Layfield Jenkins as the executrix of the last will and testament of C. C. Layfield, and by others as heirs of the said C. C. Layfield who acquired the property on December 11, 1924, through mesne conveyances from the heirs of Samson Bickley, who appears to have acquired the property in 1885. The land in lot 255 and the portion of lot 226 lying to the west of the stream is referred to in the record as the property of Boyd.

The timber cut and sued for in this case was on a tract of land situated in lot 227, consisting (as it appears from plats in the record) of approximately seven and one-half acres and lying immediately to the east of the creek. The plaintiff contends that he acquired title to this tract by virtue of a warranty deed to him executed by Robert J. Boyd on October 2, 1922, but the trial court ruled, and it was conceded by counsel for the plaintiff, that this deed was, by reason of the uncertainty of the description therein of the land sought to be conveyed, wholly insufficient to convey title to any property or to serve as color of title to any particular property.

With respect to this disputed tract of land, the record shows the following facts as to the existing physical conditions. The northwest corner of lot 227 and the northeast corner of lot 254 is marked by a large oak tree which is at or near the edge of a road known as the County Line Road which lies on the line

between Muscogee and Harris Counties. The line separating lots 227 and 254 is a straight line and runs roughly north and south. Running approximately on the line south from the said oak tree is a fence which extends approximately 950 feet southward and to a point within about 275 feet of the point where the stream crosses the line flowing from north-northwest to south-southeast from lot 254 and into lot 227. Some 75 or 80 feet north of the southerly terminus of this fence another fence is tied thereto and runs eastwardly approximately 78 feet into lot 227. This fence then turns in a southerly direction and runs an irregular course roughly parallel to the creek and always east thereof south to the line which forms the boundary between lots 254 and 255 and between 227 and 226, where it ties on to another fence which runs westwardly therefrom across the branch and roughly along the southerly boundary of lot 227 and lot 254 to the southwestern corner of lot 254. It appears from the plats included in the record before this court that the fence to the east of the creek at one point lies as much as 250 feet east of the center line of the stream and that at other points it may be as close as 15 or 20 feet. One of the plats introduced by the plaintiff shows the area between the fence and the stream as consisting of 8.67 acres, plus or minus, while the plat introduced by the defendant shows the area enclosed by the fence and the branch as consisting of 7.8 acres, plus or minus. It was from this area that the timber in dispute was cut.

The plaintiff testified that he bought the land in dispute from R. J. Boyd in 1922, that he took a deed and recorded it; that he fenced the land and that he has kept the fence up "for the last fifty years," and that his father kept it up before that. Other witnesses for the plaintiff testified that they, as tenants, maintained the fence. It appears, however, that the land between the fence and the creek was wooded land and had not been cleared or cultivated, although one of the plaintiff's witnesses testified that the plaintiff cut timber off the area in 1942 or 1943. To the west of the creek the plaintiff has cleared land which is in pasture, and the evidence shows that the plaintiff's cattle could go either to the east or to the west of the creek. The defendant's witnesses testified that the fence to the east

of the creek consisted of old wire affixed to trees in most places, and that it was in a state of disrepair and that it was down in several locations with gaps as great as 50 feet. The defendant's witnesses admitted, however, that they cut the fence in two or three places in order to get into the area to get the timber out.

■ The plaintiff does not contend that he holds title to the disputed tract by virtue of the description contained in the deeds to his original tract lying in lot 254, nor by consent of the co-terminous landowners under the principle enunciated under *Osteen* v. *Wynn,* 131 *Ga.* 209, 215 (62 S. E. 37, 127 Am. St. R. 212) (which principle was stated in *Shahan* v. *Watkins,* 194 *Ga.* 164, 168, 21 S. E. 2-d 58) insofar as the deed to his original tract is· concerned. His contention is that he holds the tract by virtue of the deed from R. J. Boyd made to him in 1922 and purporting to convey to him 25 acres of land in an unspecified location. However, as stated above, this deed is conceded to have been insufficient to pass title to any land, and the plaintiff's case must stand or fall upon actual adverse possession for a period of 20 years. Code § 85-406. The plaintiff contends in this court that the evidence demanded a verdict for him on this theory and that technical errors with respect to the admission and exclusion of evidence would thus have no effect upon the outcome of the case. This contention is not meritorious, for while the plaintiff's evidence might authorize a finding that he had taken possession of the property by enclosing it and that his possession had been continuous, open, notorious, peaceable, exclusive, uninterrupted and adverse (Code § 85-403) during all the time subsequent to 1922, there was, nevertheless, ample evidence on behalf of the defendant denying the continuity of this possession in that the defendant's evidence tended to show that the fence had not been maintained and was in fact in disrepair and was down with large gaps in it at the time he purchased the land and prior thereto. Even though the plaintiff may have taken possession of the property by fencing it at the time he purchased it, if in fact he had not maintained it, the fence did not constitute notice to the defendant such as is required by the provisions of the Code section, and, therefore, the plaintiff would not be entitled to recover. See *Toms* v. *Knighton,* 199 *Ga.* 858, 863 (36 S. E. 2d

315). We cannot say, therefore, that the evidence demanded the verdict for the plaintiff.

■ The first special ground of the motion for a new trial complains of the admission in evidence over the defendant's objection of the deed from J. J. Brooks to R. J. Boyd which was executed on November 13, 1882. Written across the top of the deed in a hand which was obviously not that of the original scrivenor are the words, "I have sold 25 acres of this 165 acres which leaves 140 acres. R. J. Boyd." This deed in this form was sought to be introduced by the plaintiff as a part of his chain of title and the defendant objected to the admission of the deed on the ground that there was no proof of the execution of the statement at the top of the deed and that it was not a part of the chain of title of the plaintiff and did not describe the land involved in this litigation. The plaintiff did not move to delete this writing from the instrument before admitting it to evidence, but merely sought to object to the introduction of the entire instrument as thus altered on the ground stated. It is not error to admit evidence which is objected to as a whole when any part of that objected to is admissible. A party objecting to evidence must specify the portion which is objectionable, and if he fails to point out exactly that portion which is objectionable and move its exclusion he cannot complain that the whole of the evidence objected to, a part of which was admissible, was admitted over his objection. This ground of the motion shows no error. *Gully* v. *State*, 116 *Ga.* 527 (2) (42 S. E. 790).

■ In the second special ground of the motion for new trial error is assigned on the admission in evidence, over objection by the defendant, of the warranty deed from Robert J. Boyd to William T. McKee dated October 2, 1922, on the ground that the purported description of property in the deed was not a legal description of any property and was a mere nullity. The property purported to be conveyed by this deed was described as follows: "All that tract or parcel of land situate, lying and being in the County of Muscogee as follows: 25 acres, more or less, in the 17th District of said county and bounded on the west by lot of land belonging to William T. McKee, and number 254; east by land belonging to the estate of S. Bickley, south by lands

of said Robert J. Boyd and north by lands of estate of S. Bickley." The court admitted the deed for the limited purpose of proving the payment of the purchase money for the land in dispute, to show the good faith of the plaintiff in entering into possession of the property and for the purpose of proving a declaration by the then owner of the property as to the location of the east boundary line, and the court instructed the jury that the deed was admitted only for these limited purposes.

Where evidence is admissible for any purpose, it is never error to overrule an objection thereto. *Hotel Dempsey Co.* v. *Miller*, 81 *Ga. App.* 233, 238 (4) (58 S. E. 2d 475). The deed offered by the plaintiff here for the purpose of proving his good faith in entering into possession of the property in dispute was admissible for that purpose and the trial court did not err in permitting it to go to the jury under instructions limiting its purpose. *Mitchell* v. *Crummey*, 134 *Ga.* 383 (1) (67 S. E. 1042); *Garbutt Lumber Co.* v. *Camp*, 137 *Ga.* 592 (1) (73 S. E. 841).

■ One of the issues which the defendant sought to raise on the trial of the case was whether the plaintiff W. T. McKee was still the owner of the disputed tract or whether he had disposed of whatever interest he had in it by deeding it to his daughter and grandchildren. The defendant sought to prove that the plaintiff had disposed of the tract in question by introducing a warranty deed dated July 19, 1946, from the plaintiff to Jean McKee Adams, his daughter, and to Jerry McKee Adams and Rosemary Adams, his grandchildren. The motion for a new trial shows, by its recitation of fact, that this deed purported to convey a tract of land belonging to the plaintiff not otherwise identified in the record and also 25 acres, more or less, "in northeast corner of land lot lying south of lot 254 in the 17th District of Muscogee County, Georgia, known as the R. J. Boyd lands." It is undisputed that the lands in dispute lie in the southwest corner of land lot 227 and that this lot lies to the east of land lot 254, and since plaintiff had testified that he had never owned any lands south of lots 254 and 227, defendant sought to elicit from plaintiff on cross-examination the admission or the statement that he had never acquired any lands other than the disputed tract from R. J. Boyd.

In the third special ground of the motion for a new trial, error is assigned on the ruling of the judge excluding from the evidence the statement of the plaintiff elicited on cross-examination that he had never purchased any land other than the disputed land from R. J. Boyd, and in the fourth ground, error is assigned on the exclusion of the evidence of the deed from W. T. McKee to his daughter and grandchildren. In the fifth special ground, error is·assigned on the refusal of the court to permit the plaintiff to answer on cross-examination the question as to whether he had admitted on a previous occasion that he had conveyed the property in question to his daughter and grandchildren, and in the seventh special ground, error is assigned on the exclusion of evidence contained in the deposition of one of the defendant's witnesses to the effect that the plaintiff had told her that he had given his plantation to his daughter.

The deed referred to in the fourth special ground was utterly void as the conveyance of any particular property. *Huntress* v. *Portwood,* 116 *Ga.* 351 (42 S. E. 513); *Farrar Lumber Co.* v. *Brindle,* 170 *Ga.* 37 (5) (151 S. E. 923); *Oglesby* v. *Volunteer State Life Ins. Co.,* 195 *Ga.* 65 (23 S. E. 2d 404); *Paulk* v. *Perry,* 44 *Ga. App.* 131 (1) (160 S. E. 681). The description of the 25 acres of land sought to be conveyed thereby was not rendered sufficiently definite by the inclusion, in the description of the lands conveyed of the words "known as the R. J. Boyd lands," since the evidence shows that any lands held by the plaintiff which he acquired from R. J. Boyd were cut off from a larger tract owned by R. J. Boyd. *Grace* v. *Grace,* 92 *Ga. App.* 693, 696 (89 S. E. 2d 813). Furthermore, were this deed otherwise sufficient to convey any identifiable tract of land, it does not purport to convey the tract in dispute since it purported to convey land lying in land lot 255, whereas it is undisputed that the land here involved all lies in lot 227.

For these reasons, the deed was not relevant and material to prove the contention of the defendant that the plaintiff had conveyed the property in dispute to others and it was, therefore, properly excluded. Likewise, since the evidence excluded as complained of in special grounds 3, 5 and 7 all related to this deed, it was not relevant or material to prove the defendant's

contentions in this regard and it was properly excluded. It follows that special grounds 3, 4, 5 and 7 do not show harmful error requiring the grant of a new trial.

■ In special ground 6 the defendant assigns error on the ruling of the court excluding from the evidence a portion of the testimony of a witness for the defendant given by deposition under the following circumstances. The witness was the daughter of a deceased former owner of the defendant's tract of land, and one of the parties who executed the deed to the defendant. On direct examination she testified that her father told her at some unspecified date that the plaintiff had asked him if he could move his fence out of the creek and up on the bank to keep the cows from coming across and to prevent high water from washing the fence away, and that her father agreed to let the plaintiff do that, stating that Mr. McKee was old and he wanted to accommodate him and did not think it would make any difference. ˙This evidence was hearsay in that it was evidence of a statement in disparagement of the plaintiff's title to the property in question which depended for its credibility upon the veracity òf the witness' father, since deceased, and who was not present nor subject to cross-examination by the opposite party. Code § 38-301. This evidence was not within any of the exceptions to the hearsay rule and was properly excluded.

■ In the final special ground of the motion, error is assigned on the refusal of the court to permit the introduction in evidence of the decree in the case of F. E. Turner v. James Cartledge Boyd and J. Robert Boyd which was rendered at the October, 1956, term of the Muscogee Superior Court. Among other things, this decree provided that the defendant had title and right of possession to all the land in lot 226 of the 17th District of Muscogee County with the exception of that part lying to the west of the thread of Kendle or Franklin Creek or Boyd's Branch. The plaintiff was not a party to that case and the land there involved does not appear to be any part of the land involved in this case, since all of the land in dispute here lies in lot 227. This evidence was not relevant to the issue in this case, and the trial court did not err in excluding it.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*